# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

VIRGINIA L. GIUFFRE,

      Plaintiff,

v.

GHISLAINE MAXWELL,

      Defendant.

-------------------------------------------------X

**15-cv-07433-RWS**

# Reply Brief in Support of Defendant's
## Motion for Summary Judgment

Laura A. Menninger
Jeffrey S. Pagliuca
Ty Gee
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
303.831.7364

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT .................................................................................................... 2

I.   Ms. Maxwell is not liable for republications of the January 2015 statement. ............. 2

    A.   Plaintiff's argument against summary judgment is substantially groundless. 2

    B.   New York state and federal courts have rejected liability for republication based on "foreseeability." ............................................................................... 5

    C.   Plaintiff's purported application of the *Geraci* rule is misleading and wrong. ............................................................................................................ 6

    D.   Subjecting Ms. Maxwell to liability for the media's republication of excerpts they unilaterally selected is particularly unfair. ............................... 9

    E.   Mr. Barden's declaration is perfectly proper. ................................................. 11

    F.   Plaintiff effectively has confessed Arguments I.B. and I.C. of the Memorandum. ............................................................................................... 12

II.  The January 2015 statement is constitutionally protected opinion. ........................... 12

III. The pre-litigation privilege bars this action. ................................................................. 20

    A.   The privilege applies to the January 2015 statement. ..................................... 20

    B.   Malice is irrelevant to the pre-litigation privilege. ........................................ 21

IV. Ms. Maxwell's January 4, 2015, statement is nonactionable. .................................... 25

V.  Summary judgment is warranted because plaintiff cannot establish falsity or actual malice by clear and convincing evidence. ................................................................. 25

CONCLUSION ................................................................................................ 30

CERTIFICATE OF SERVICE ........................................................................... 32

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). ...............................................9

*Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 358 & n.6 (S.D.N.Y. 2014) .....................25

*Cerasani v. Sony Corp.*, 991 F. Supp. 343, 351 (S.D.N.Y. 1998)...................................3, 4

*Chambers v. Wells Fargo Bank, N.A.*, No. CV 15-6976 (JBS/JS), 2016 WL 3533998, at *8 (D.N.J. June 28, 2016)........................................................................................2, 20

*China Med. Techs., Inc.*, 539 B.R. 643, 658 (S.D.N.Y. 2015)...........................................12

*Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 645-46 (S.D.N.Y. 2015) .........13,25

*Croy v. A.O. Fox Mem'l Hosp.*, 68 F. Supp. 2d 136, 144 (N.D.N.Y. 1999) ......................3

*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 927 (2d Cir. 1987) ..................25

*Davis v. Boeheim*, 22 N.E.3d 999 (N.Y. 2014) ...........................................................14,18

*Davis v. Costa-Gavras* ("*Davis I*"), 580 F. Supp. 1082, 1096 (S.D.N.Y. 1984) .......2,3,4,6

*Davis v. Costa-Gavras* ("*Davis II*"), 595 F. Supp. 982, 988 (S.D.N.Y. 1984) ..................3

*Dibella v. Hopkins*, No. 01 CIV. 11779 (DC), 2002 WL 31427362, at *2 (S.D.N.Y. Oct. 30, 2002)...............................................................................................................20

*DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir.2005) ....................................................25

*Egiazaryan v. Zalmayev* ("*Egiazaryan I*"), No. 11 CIV. 2670 PKC, 2011 WL 6097136, at *5 (S.D.N.Y. Dec. 7, 2011) .............................................................................................3

*Egiazaryan v. Zalmayev* ("*Egiazaryan II*"), 880 F. Supp. 2d 494, 501 (S.D.N.Y. 2012) ...................................................................................................................................3,4,5

*Folwell v. Miller*, 145 F. 495, 497 (2d Cir. 1906) ..........................................................2,4

*Front, Inc. v. Khalil*, 28 N.E.3d 15, 16 (N.Y. 2015) .................................2, 20,21,22,24,25

*Geraci v. Probst*, 938 N.E.2d 917, 921 (N.Y. 2010).....................................2,3,5,6,8,10,13

*Green v. Cosby*, 138 F. Supp. 3d 114 (D. Mass. 2015) .................................................... 14

*Hawkins v. Harris*, 661 A.2d 284, 289-91 (N.J. 1995) ................................................. 2, 20

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) ............................................................ 12

*Hoffman v. Landers*, 537 N.Y.S.2d 228, 231 (2d Dep't 1989) ......................................... 5

*Immuno AG v. Moor-Jankowski,* 567 N.E.2d 1270, 1274 (N.Y. 1991) ........................... 13

*Karaduman v. Newsday, Inc.*, 416 N.E.2d 557, 560 (N.Y. 1980)...................................... 3

*Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) ................................. 26

*Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys.*, 844 F.2d 955, 959 (2d Cir. 1988).................................................................................................................... 15, 28, 29

*Levy v. Smith*, 18 N.Y.S.3d 438, 439 (2d Dep't 2015)....................................................... 5

*Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992)................................................. 22

*National Puerto Rican Day Parade, Inc. v. Casa Pubs.* ("*NPR*"), 914 N.Y.S.2d 120, 122-23 (1st Dep't 2010).......................................................................................................... 5

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) ............................................................ 13

*Phila. Newspapers v. Hepps*, 475 U.S. 767, 773 (1986). .................................................. 26

*Porky Prods. v. Nippon Exp. U.S.A.*, 1 F.Supp.2d 227, 234 (S.D.N.Y. 1997)................... 2

*Rand v. New York Times Co.*, 430 N.Y.S.2d 271, 275 (1st Dep't 1980) ...................... 9, 10

*Rinaldi v. Viking Penguin, Inc.*, 420 N.E.2d 377, 382 (N.Y. 1981).............................. 2,3,7

*Rinaldi v. Viking Penguin, Inc.*, 425 N.Y.S.2d 101, 104 (1st Dep't 1980) ......................... 3

*Rizzuto v. Nexxus Prod. Co.*, 641 F. Supp. 473, 481 (S.D.N.Y. 1986), *aff'd*, 810 F.2d 1161 (2d Cir. 1986) ...................................................................................................... 16

*Schoepflin v. Coffey,* 56 N.E. 502 (N.Y. 1900) ............................................................. 3,5

*Steinhilber v. Alphonse*, 501 N.E.2d 550 (N.Y. 1986) ............................................ 11,13,16

*Sweeney v. Prisoners' Legal Servs. of N.Y.*, 538 N.Y.S.2d 370, 371-72 (3d Dep't 1989). ........................................................................................................... 19

*Telephone Sys. Int'l v. Cecil*, No. 02 CV 9315(GBD), 2003 WL 22232908, at *2 (S.D.N.Y. Sept. 29, 2003)........................................................................ 16, 30

*Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 12 CIV. 3040 KBF, 2013 WL 3055437, at *3 (S.D.N.Y. Apr. 22, 2013) ................................................... 12

*United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985)..................................... 25

**Rules**

Federal Rule of Civil Procedure 12(b)(6)............................................................ 5

**Treatises**

*Sack on Defamation* § 2.7.2, at 2-113 to -114 (4th ed. 2016) ............................................. 4

## PRELIMINARY STATEMENT

Before the Court reaches the question whether plaintiff can prove falsity and actual malice, it should decide three questions of law, one that narrows considerably the legal issues and two that dispose of the case entirely.

1. It is undisputed Ms. Maxwell, through her agents, sent to various media-representatives—and to no one else—the January 2015 statement. It is undisputed she had no control over any of the media that decided to republish excerpts from the statement. On these facts, under black letter New York law, she is not responsible for these republications. Plaintiff's contrary argument relies on a "foreseeability" doctrine the New York Court of Appeals has specifically rejected. Summary judgment should enter in favor of Ms. Maxwell as to any republication.

2. Under the New York Constitution, whether a statement is constitutionally nonactionable opinion depends upon, among other things, an examination of the full context of the communication and consideration of the setting surrounding it. The January 2015 statement, making no reference to specific allegations, explains *why* the author believes plaintiff's allegations are "obvious lies": "Each time the story is re told [sic] it changes with new salacious details . . . ." It is an expression of a venerable opinion: when a person falsely cries wolf previously, others are free to opine she is telling falsehoods now. This is nonactionable opinion.

3. Under New York law, a statement made pertinent to good faith anticipated litigation is nonactionable. The statement was sent exclusively to the media representatives, and contained a clear message: the media should not republish plaintiff's "obvious lies," else Ms. Maxwell would sue them. Such a statement is nonactionable.

If the Court reaches the question of falsity and actual malice, the Rule 56 record establishes plaintiff cannot prove falsity and actual malice by clear and convincing evidence.

1

**ARGUMENT**

## I.  Ms. Maxwell is not liable for republications of the January 2015 statement.

Under black letter New York law, liability for republication of an allegedly defamatory statement "must be based on real authority to influence the final product." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1096 (S.D.N.Y. 1984). "[W]here a defendant 'had no actual part in composing or publishing,' he cannot be held liable." *Id.* (citing *Folwell v. Miller*, 145 F. 495, 497 (2d Cir. 1906)); *accord Geraci v. Probst*, 938 N.E.2d 917, 921 (N.Y. 2010). "[C]onclusive *evidence of lack of actual authority* [is] sufficiently dispositive that *the [trial court] 'ha[s] no option but to dismiss the case* . . . .'" *Id.* (emphasis supplied; quoting *Rinaldi v. Viking Penguin, Inc.*, 420 N.E.2d 377, 382 (N.Y. 1981)).

It is undisputed Ms. Maxwell and her agents had no ability to control and did not control whether or how the media-recipients would use the statement. Doc. 542-7, Ex.J ¶¶ 2-3; *id.*, Ex.K ¶ 24. Unsurprisingly, plaintiff has offered no evidence of such control. *A fortiori* this Court "ha[s] no option but to dismiss the case," *id.* (internal quotations omitted), to the extent it is founded upon the media's republication of the statement.

### A.  Plaintiff's argument against summary judgment is substantially groundless.

A legal argument is frivolous if it is presented contrary to a "long line of authorities" and the "fundamental principles"[1] of the underlying substantive law. Plaintiff Giuffre's argument opposing summary judgment as to republication is frivolous.

The New York Court of Appeals in *Geraci* followed a long line of New York cases holding that a defamation defendant is not liable for republication of his allegedly defamatory statement unless he had "actual authority" to control the decision to republish: "Our

---

[1]*Porky Prods. v. Nippon Exp. U.S.A.*, 1 F.Supp.2d 227, 234 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998).

2

republication liability standard has been consistent for more than one hundred years." *See Geraci,* 938 N.E.2d at 921 (footnote omitted). Indeed, the *Geraci* court observed, the New York Court of Appeals in *Schoepflin v. Coffey,*[2] a case decided in 1900, held:

> "*It is too well settled to be now questioned* that one who . . . prints and publishes a libel[] is not responsible for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control and who thereby make themselves liable to the person injured, and that *such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel.*"

938 N.E.2d at 921 (emphasis supplied; quoting *Schoepflin,* 56 N.E. at 504).

The cases in which this Court and its sister courts in this Circuit assiduously have followed this line of New York cases are legion.[3] The Second Circuit was in the vanguard.[4]

---

[2] 56 N.E. 502 (N.Y. 1900).

[3] *See Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 501 (S.D.N.Y. 2012) ("[t]he original publisher is not liable for republication where he had 'nothing to do with the decision to [republish] and [he] had no control over it.'") (quoting *Rinaldi v. Viking Penguin, Inc.*, 425 N.Y.S.2d 101, 104 (1ˢᵗ Dep't 1980), *aff'd*, 420 N.E.2d 377 (N.Y. 1981)); *Egiazaryan v. Zalmayev*, No. 11 CIV. 2670 PKC, 2011 WL 6097136, at *5 (S.D.N.Y. Dec. 7, 2011) (same); *Davis v. Costa-Gavras*, 595 F. Supp. 982, 988 (S.D.N.Y. 1984) ("Under New York law, liability for a subsequent republication must be based on real authority to influence the final product, not upon evidence of acquiescence or peripheral involvement in the republication process."); *Davis*, 580 F. Supp. at 1094 (original publisher not liable for injuries caused by the republication "'absent a showing that they approved or participated in some other manner in the activities of the third party republisher'") (quoting *Karaduman v. Newsday, Inc.*, 416 N.E.2d 557, 560 (N.Y. 1980)); *Croy v. A.O. Fox Mem'l Hosp.*, 68 F. Supp. 2d 136, 144 (N.D.N.Y. 1999) ("The original author of a document may not be held personally liable for injuries arising from its subsequent republication absent a showing that the original author approved or participated in some other manner in the activities of the third-party republisher.") (citations omitted); *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 351 (S.D.N.Y. 1998) ("a libel plaintiff must allege that the party had authority or control over, or somehow ratified or approved, the republication").

[4] *See Folwell v. Miller*, 145 F. 495, 497 (2d Cir. 1906) (affirming directed verdict in favor of managing editor: "when it appears affirmatively that he was not on duty [upon receipt of libelous matter and its republication], and could not have had any actual part in composing or publishing, we think he cannot be held liable without disregarding the settled rule of law by which no man is bound for the tortious act of another over whom *he has not a master's power of control*") (emphasis supplied), *quoted with approval in Davis I*, 580 F. Supp. at 1096; *Cerasani*, 991 F. Supp. at 351.

3

In the face of this uninterrupted line of New York state (and federal) cases dating back to the nineteenth century powerfully establishing a bright line rule regarding republication liability, plaintiff Giuffre manages what amounts to a—frivolous—murmur of opposition. She claims there are "[t]wo standards" in New York law: one "older," and one "more modern." Resp. 28. The "older" standard, plaintiff says, is represented by the legion of cases we have cited. The "more modern formulation"—where can it be found? Why, in one place: a treatise on defamation. *Id.* (citing *Sack on Defamation* § 2.7.2, at 2-113 to -114 (4th ed. 2016)). It surely is frivolous to argue that a treatise creates a republication-liability standard that is separate from, "more modern" than, and supersedes the New York Court of Appeals' 2010 decision in *Geraci* and this Court's 2012 decision in *Egiazaryan*.

Trying to build on this start, plaintiff argues, "New York appellate courts have *repeatedly held* than an individual is liable for the media publishing that individual's defamatory press release." Resp. 28 (emphasis supplied). Even if we accept plaintiff's mischaracterization of the January 2015 statement as a "press release,"[5] her argument still would be meritless. To begin with, when plaintiff says the New York appellate courts have "repeatedly" supported her claimed rule of law, she means . . . twice. And an examination of those two cases reveals she is quite wrong and, worse, has advanced a seriously misleading argument. Neither case involved, as here, a motion for summary judgment. In both cases, the New York appellate division affirmed the denial of a motion to dismiss under the state's equivalent of Federal Rule of Civil Procedure 12(b)(6). *See Levy v. Smith*, 18 N.Y.S.3d 438, 439 (2d Dep't 2015); *National Puerto Rican Day Parade, Inc. v. Casa Pubs.* ("*NPR*"), 914 N.Y.S.2d 120, 122-23 (1st Dep't 2010).

---

[5] As discussed in This Reply, at 16-19, the January 2015 statement would be a strange "press release," as it threatened to sue the very press to which it was "releasing" information.

4

This argument, too, is frivolous. Despite plaintiff's baseless claim there is an "old" formulation and a "more modern" formulation of republication-liability law in New York, both cases she cites *applied the same "old" standard used by the New York Court of Appeals in* Geraci*, by this Court in the two* Egiazaryan *cases*, and by us in our Memorandum of Law in support of Ms. Maxwell's motion for summary judgment. *See Levy*, 18 N.Y.S.3d at 439 (citing *Geraci* and *Schoepflin*); *NPR*, 914 N.Y.S.2d at 594-95 (citing *Hoffman v. Landers*, 537 N.Y.S.2d 228, 231 (2d Dep't 1989) (citing *Schoepflin*)).

Both the courts in *Levy* and *NPR* applied the *Geraci* standard and the 12(b)(6) standards, e.g., assuming the pleaded facts were true. They concluded it was possible to infer from the complaints' allegations that the defendant caused the republications. Accordingly, they denied the motions to dismiss. *See Levy*, 18 N.Y.S.2d at 439; *NPR*, 914 N.Y.S.2d at 123. It was improper for plaintiff to cite these cases without disclosing they are 12(b)(6) cases in which the courts applied the *Geraci* republication rule and inferred facts from the pleaded allegations.

### B. New York state and federal courts have rejected liability for republication based on "foreseeability."

Plaintiff cites section 576 of the Restatement (Second) of Torts for the proposition that if republication was foreseeable, then the defendant is the cause of any special damages from the republication. This argument is frivolous. As an initial matter, plaintiff has pleaded no special damages. *See* Doc.1; Doc.23 at 23; Doc.37 at 17.

Regardless, the New York Court of Appeals in *Geraci rejected* the Restatement's foreseeability doctrine. *See* 938 N.E.2d at 921-22 (noting that section 576's foreseeability standard "is not nearly as broad as plaintiff . . . suggest[s]" and "[t]hat *we did not endorse* such a broad [Restatement] standard of foreseeability in *Karaduman* is evident from our decision the following year in *Rinaldi*") (emphasis supplied).

While trying to distinguish this Court's decision in *Davis*, plaintiff fails to disclose that *Davis* itself—decided 26 years before *Geraci*—also *rejected* plaintiff's foreseeability argument. The *Davis* plaintiffs, like plaintiff Giuffre here, also asserted republication liability, despite defendant's lack of participation, on the ground "he could reasonably have foreseen that republication would occur." 580 F.Supp. at 1096. This Court, relying on *Karaduman*, was unpersuaded: The New York Court of Appeals "has not applied the foreseeability standard suggested by plaintiffs in prior libel cases in which such a standard would have been relevant, if not controlling." *Id.* This Court noted: The jurisdictions that have adopted a foreseeability standard "have refused to hold responsible a defendant with no control or influence over the entity that actually republished the statement." *Id.* Plaintiff's failure to disclose this Court's holdings in *Davis* is a notable lapse in candor.

### C. Plaintiff's purported application of the *Geraci* rule is misleading and wrong.

Plaintiff eventually purports to apply the "old" standard, that is to say, the controlling law in the state of New York. She argues Ms. Maxwell "authorized" the January 2015 statement, "paid money to her publicist to convince media outlets to publish it," "request[ed]" its publication, "made a deliberate decision to publish her press release," "actively participated" in "the decision to publish her press release," was "active" in "influencing the media to publish" the statement, and "approved of" and "pushed for" the publication of the statement. Resp. 30-31. These argument-manufactured facts have no record support.

In applying the controlling law, plaintiff wittingly makes a mess of it. She disingenuously suggests any help Ms. Maxwell gave to help her lawyer prepare the January 2015 statement and her signing-off on it are the equivalent of requesting, authorizing and controlling its *republication*. That isn't the law. The "authority" required for republication liability is the "actual authority . . . *to decide upon or implement*" the republication. 580 F.Supp. at 1095

6

(emphasis supplied; citing *Rinaldi*, 420 N.E.2d at 382). Judge Sofaer studied *Rinaldi*'s holding, and noted republication liability must be based on a "decision" by the defendant to republish and must focus on "real authority to influence the final product, *not upon evidence of acquiescence or peripheral involvement in the republication process*." *Id.* at 1096 (emphasis supplied). Accordingly, Judge Sofaer held, when there is "conclusive evidence of lack of actual authority" this is "dispositive" of republication liability and the trial court "'ha[s] *no option but to dismiss the case* against the [defendant]." *Id.* (emphasis supplied; quoting *Rinaldi*, 420 N.E.2d at 382).

There is no evidence Ms. Maxwell "paid money to her publicist to convince" the media to publish her statement; this is why plaintiff cites no evidence to support that assertion. *See* Resp. 30. Mr. Gow's email containing the statement says nothing to "convince" the media to publish the statement. *See* Doc.542-6, Ex.F. There is no evidence Ms. Maxwell was "active" in "influencing the media to publish" it; nor is there any evidence she "pushed for" or "requested" its publication; this is why plaintiff cites no evidence to support these assertions. *See id.* 31.

Indeed, plaintiff has zero evidence Ms. Maxwell or her agents ever did anything to urge or request any media to publish the statement. Mr. Gow presented the January 2015 statement via email to six to thirty media representatives; it was not sent to anyone else; in the email he told the journalists he was presenting a "quotable statement" "on behalf of" Ms. Maxwell and "[n]o further communication will be provided." Doc.542-6, Ex.F. It is undisputed Ms. Maxwell and her agents had no control over the media that republished portions of the statement. Doc.542-7, 542-7, Ex.J ¶¶ 2-3; *id.*, Ex.K ¶ 24.

Plaintiff argues "a jury" should decide whether Ms. Maxwell "authorized or intended" the statement to be republished, or "approved of, and even participated, in" its republication. Resp. 30-31. All plaintiffs want to get to "a jury." The summary-judgment question is whether they deserve to. Plaintiff has offered no evidence to put before a jury on the dispositive *Geraci*

question: whether Ms. Maxwell affirmatively authorized or requested a person or entity "over whom [s]he has . . . control," 938 N.E.2d at 921. The only new argument plaintiff makes in her entreaty to see "a jury" is that she should be permitted to prove Ms. Maxwell's "complicity." As with her other factually bereft arguments, the complicity argument awaits plaintiff's introduction of facts to support it. Having failed to do so, plaintiff cannot avoid summary judgment.

Plaintiff labors in vain to turn the Barden Declaration into "disputed issues of fact." For there to be a disputed factual issue, plaintiff would need to introduce evidence disputing his sworn statements. She has not done so. In any event, the Barden Declaration is all but irrelevant to the central, dispositive republication question: whether Ms. Maxwell is liable for the media's republication of her statement, where they did so without her authority or request and where she and her agents had "no control"[6] over the media. On this question we cited to the Barden Declaration for one evidentiary fact: Messrs. Barden and Gow had no control over the media.[7] *See* Doc.542-7, Ex.K ¶ 24, *cited in* Memo. of Law 14.[8] Plaintiff has offered no admissible evidence disputing this fact.

 "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). It is one thing to argue in conclusory fashion, as plaintiff does, that "a jury" should decide a factual question. It is quite another to identify evidence in the Rule 56 record that raises a genuine question of material fact, which plaintiff does not do. Summary judgment is warranted.

---

[6]*Geraci*, 938 N.E.2d at 921.

[7]As discussed in Argument I.D., below, we cited more plenarily to the Barden Declaration in connection with a different point—the particular unfairness of subjecting Ms. Maxwell to liability when the media selectively quoted portions of the January 15 statement.

[8]In the Memorandum, we erroneously cited to ¶ 24 of Exhibit J; we intended to cite to ¶ 24 of Exhibit K (Doc.542-1, Ex.K), which is Mr. Barden's declaration.

**D.  Subjecting Ms. Maxwell to liability for the media's republication of excerpts they unilaterally selected is particularly unfair.**

It is undisputed that no one ever republished *in toto* the January 2015 statement and that various media unilaterally selected portions of the statement to republish. We said on page 14 of our Memorandum that the media's "selective, partial republication of the statement is *more problematic* yet" (emphasis altered). That is to say, as improper as it is to hold a publisher of a statement liable for republications over which she had no control, worse is it to make her liable for selective, partial republications of her statement. We relied on the holding in *Rand v. New York Times Co.*, 430 N.Y.S.2d 271, 275 (1ˢᵗ Dep't 1980), that a publisher cannot be charged with a republisher's "editing and excerpting of her statement." Memo. of Law 14.

Plaintiff argues that our position is "absurd on its face" because "[i]t would mean . . . a defamer could send to the media a long attack on a victim with one irrelevant sentence and, when the media quite predictably cut that sentence, escape liability." Resp. 32. This argument has two erroneous assumptions. One is that the "defamer" can "escape liability." Not true. An original publisher remains liable for her defamation. We are concerned here with *republication.* The second wrong assumption is that the original publisher must always remain liable for any republication. *Geraci* rejects that view: Under New York law "each person who repeats the defamatory statement is responsible for the resulting damages." 938 N.E.2d at 921.

The effort by plaintiff to distinguish *Rand* is meritless. She argues the media's republication of the January 2015 statement actually was not a republication at all, just an original publication. Resp. 32. *That* argument is "absurd on its face," *id.*, since there is no dispute Ms. Maxwell did not control the media's decision to republish (excerpts from) the statement. Plaintiff next argues the media did not "edit[]" or "tak[e] . . . quote[s] out of context." *Id.* Plaintiff could not be more wrong. As she concedes, all republications of the statement by the

9

media were selective, partial republications of the statement. Any such selective, partial republication by definition took those excerpts "out of context." This is so because Mr. Gow informed the media in his email that he was providing "a quotable statement," Doc.542-6, Ex.F, not a statement "from which you, the media, are free to excerpt as you please."

More importantly, as Mr. Barden explained, selectively excerpting the statement substantially altered his message. *See id.*, Ex.K ¶ 20. For example, when he said in the third paragraph that plaintiff's claims are "obvious lies," it followed two paragraphs in which he explained *why* it was obvious the new claims are lies. *See id.*, Ex.K ¶¶ 19-22. Excerpting and republishing only the "obvious lies" phrase—as plaintiff did in her complaint—certainly gives the reader a different understanding than if the media had republished the entire statement. As *Rand* held: A defendant cannot be liable for the republication of derogatory but constitutionally protected opinion "when the foundation upon which that opinion is based is omitted. The defamatory remark should be read against the background of its issuance." 430 N.Y.S.2d at 275 (internal quotations omitted).

Plaintiff argues: "A jury could reasonably conclude that [Ms. Maxwell's] statement that Ms. Giuffre's *claims of child sexual abuse* are 'obvious lies' is not a rhetorical device, nor hyperbole, but a literal and particular affirmation that [plaintiff] lied." Resp. 33 (emphasis supplied). We italicize plaintiff's rhetorical sleight of hand. As plaintiff knows, nowhere did the January 2015 statement specify which of plaintiff's countless allegations are "obvious lies." Indeed, this is the problem with plaintiff's case: since the statement specified no particular allegations as obvious lies, plaintiff believes she is entitled to "prove" the truth of every allegation she ever has made about her alleged experience as a "sex slave." What Mr. Barden's declaration makes clear is he deliberately made no reference to any specific allegation by plaintiff. He had a bigger target: plaintiff's credibility. He used the statement to show plaintiff's

10

behavior is that of a liar, i.e., one who increasingly embellishes her story, and her allegations become more and more outlandish, so that by January 2015 she was claiming to have had sex with a well respected Harvard law professor, Alan Dershowitz. *See* Doc.542-7, Ex.K ¶¶ 19-22.

Contrary to plaintiff's argument, "even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate . . . or other circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Steinhilber v. Alphonse,* 501 N.E.2d 550, 556 (N.Y. 1986) (internal quotations and brackets omitted). That was the case here. Plaintiff falsely—and, as Judge Marra held, "unnecessar[ily]"[9]—alleged in lurid detail that Ms. Maxwell had sexually abused her. The six to thirty journalists would have anticipated a "fiery" denial of the allegations. Regardless, the statement overall was constitutionally protected opinion grounded on facts disclosed to the journalists: plaintiff's increasingly outlandish and inconsistent stories, her newly embellished allegations, and her increasingly lurid and salacious enhancements of her earlier allegations.

**E. Mr. Barden's declaration is perfectly proper.**

Plaintiff makes a plethora of complaints about Mr. Barden's declarations. None has any merit. She objects to Mr. Barden's declaration of his intent and purposes for preparing the January 2015 statement because, she says, this implicates the attorney-client privilege. That is untrue. His intent and purposes are by definition *not* attorney-client communications and do not implicate such communications; they are attorney work product,[10] which he is free to disclose.[11]

---

[9]Doc.542-5, Ex.E, at 5.

[10]*Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 12 CIV. 3040 KBF, 2013 WL 3055437, at *3 (S.D.N.Y. Apr. 22, 2013) (identifying work product as including defense counsel's "mental impressions, thought processes and strategies connected with [the] defense") .

[11]*See In re China Med. Techs., Inc.*, 539 B.R. 643, 658 (S.D.N.Y. 2015)

She objects he is "non-deposed." But Mr. Barden was the third-listed potential witness in our Rule 26(a)(1)(A) disclosure, served on plaintiff a year ago; the disclosure said he "has knowledge concerning press statements by . . . Defendant in 2011-2015 at issue in this matter."[12] Plaintiff was free to depose him; that she chose not to was her own tactical decision. Finally, plaintiff argues "there are factual disputes" regarding the declaration. But plaintiff identified no such factual disputes relating to the declaration. A party opposing summary judgment cannot create a dispute by arguing, which is all plaintiff does. *See* Resp. 35-38.

###### F.   Plaintiff effectively has confessed Arguments I.B. and I.C. of the Memorandum.

Argument I.B. of the Memorandum contends the First Amendment bars liability for republication by media organizations of the January 2015 statement. *See* Memo. of Law 16-17. Argument I.C. contends that under *Geraci* plaintiff is barred from introducing into evidence any of the media organizations' republication of the January 2015 statement. *See id.* at 17-18. Plaintiff offers no resistance to these arguments. We respectfully request that the Court consider these arguments confessed. *See, e.g.*, *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 645-46 (S.D.N.Y. 2015) (citing cases).

### II.   The January 2015 statement is constitutionally protected opinion.

In deciding whether a statement is opinion the New York Constitution requires application of "the widely used four-part *Ollman*[13] formula," *Immuno AG v. Moor-Jankowski,* 567 N.E.2d 1270, 1274 (N.Y. 1991). *See id.* at 1274, 1277-78, 1280-82 (noting *Steinhilber*'s adoption of formula). We addressed each of the four *Ollman* factors. The plaintiff avoids this analysis, choosing merely to block-quote large portions of this Court's Rule 12(b)(6) order. That

---

[12]Menninger Decl. Exhibit NN, at 2.

[13]*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984).

is a mistake. *Immuno AG* is the seminal case prescribing the analysis to be used in a *summary-judgment proceeding* for assessing whether under the New York Constitution a statement is absolutely protected as opinion.

Instead of addressing the four factors, plaintiff simply relies on this Court's 12(b)(6) order. The Court's order does not control. In deciding the Rule 12(b)(6) motion, the Court assumed the complaint's allegations were true and drew all reasonable inferences in plaintiff's favor. In this proceeding, plaintiff is not entitled either to the assumption or the inferences. The opinion-versus-fact question will be controlled by the Rule 56 record.

Relying on the Court's order, plaintiff argues that the question whether the three allegedly defamatory sentences are opinion or fact is controlled by *Davis v. Boeheim*, 22 N.E.3d 999 (N.Y. 2014), and *Green v. Cosby*, 138 F. Supp. 3d 114 (D. Mass. 2015). *See* Resp. 38. *Davis* was an appeal from a 12(b)(6) dismissal. This procedural posture was critical to its decision:

> [D]efendants argue that because a reader could interpret the statement as pure opinion, the statement is as a consequence, nonactionable and was properly dismissed [pursuant to a pre-answer motion]. However, on a motion to dismiss we consider whether any reading of the complaint supports the defamation claim. Thus, although it may well be that the challenged statements are subject to defendants' interpretation, the motion to dismiss must be denied if the communication at issue, taking the words in their ordinary meaning and in context, is also susceptible to a defamatory connotation. We find this complaint to meet this minimum pleading requirement.

*Davis*, 22 N.E.3d at 1006-07 (internal quotations, brackets, ellipsis and citations omitted).

*Green* was a decision on the defendant's motion to dismiss. The case was decided under *California* and *Florida* defamation law. *See* 138 F. Supp. 3d at 124, 130, 136-37. The court made it clear the 12(b)(6) procedural posture was critical to its decision: "At this stage of the litigation, the court's concern is whether any fact contained in or implied by an allegedly defamatory statement is susceptible to being proved true or false; if so capable, Defendant cannot avoid application of defamation law by claiming the statement expresses only opinion." *Id.* at 130.

13

In the case at bar, application of the four *Steinhilber* factors on the Rule 56 record compels a different conclusion. The complaint alleges three sentences in the January 2015 statement are defamatory: in the first paragraph of the statement, plaintiff Giuffre's allegations are "untrue"; in the same paragraph, the "original allegations" have been "shown to be untrue"; and in the third paragraph, plaintiff's "claims are obvious lies."[14] Doc.1 ¶ 30.

**Factor 1: Indefiniteness and ambiguity.** On the face of the complaint in a 12(b)(6) proceeding, the words "untrue" and "obvious lies" might be susceptible of "a specific and readily understood factual meaning," Doc.37 at 9. This is especially true if it is taken out of context, e.g., extracted from the statement. But this approach is forbidden. *See, e.g., Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys.*, 844 F.2d 955, 959 (2d Cir. 1988).

The first sentence—"[t]he allegations made by [plaintiff] against [Ms. Maxwell] are untrue"—is indefinite and ambiguous because it is wholly unclear which "allegations" are being referenced. The second sentence—"[t]he original allegations . . . have been fully responded to and shown to be untrue"—also is indefinite and ambiguous for the same reason. Additionally, it is unclear what are the "original" allegations. It is unclear what is meant by "shown to be untrue." What one person may believe is a fact shown to be untrue, another person may believe is a fact not (sufficiently) shown to be untrue. The existence of God, climate change and existence of widespread voter fraud in the election are examples of this. The third sentence—

---

[14]Ms. Maxwell testified in her deposition that she "know[s]" plaintiff is a "liar." This testimony, plaintiff argues, "contradict[s]" our contention that the three allegedly defamatory sentences in the July 2015 statement are opinion. Resp. 39-40. Plaintiff's argument is a *non-sequitur*. Ms. Maxwell's 2016 deposition testimony in which she disclosed all the reasons she believes plaintiff has uttered a plethora of false allegations is irrelevant to whether the three sentences in the July 2015 statement, prepared by Mr. Barden to respond to the joint-motion allegations, are opinions.

"[plaintiff's] claims are obvious lies"—also is indefinite and ambiguous. An "obvious lie" to one person is not an "obvious lie" to another.

**Factor 2: Capable of being characterized as true or false.** On the 12(b)(6) record, the Court held the three statements "are capable of being proven true or false." Doc.37 at 9. As a general question of law, one person's statement that another person's allegations are "untrue" or are "obvious lies" is not necessarily capable of being proved true or false—regardless of the subject matter of the opined "untruths" or "lies." *See Rizzuto v. Nexxus Prod. Co.*, 641 F. Supp. 473, 481 (S.D.N.Y. 1986), *aff'd*, 810 F.2d 1161 (2d Cir. 1986); *Telephone Sys. Int'l v. Cecil*, No. 02 CV 9315(GBD), 2003 WL 22232908, at *2 (S.D.N.Y. Sept. 29, 2003); Memo. of Law 35 (citing cases). As *Steinhilber* observed, "even apparent statements of fact may assume the character of statements of opinion, and thus be privileged." 501 N.E.2d at 556.

At least two of plaintiff's CVRA allegations cannot be proven true or false (only two such allegations are needed in order to render the January 15 statement an opinion). We have identified two such allegations in the joinder motion: that Ms. Maxwell "appreciated the immunity granted" to Epstein, and that she "act[ed] as a 'madame' for Epstein." Memo. of Law 22. Plaintiff does not dispute this. The result is that the January 15 statement's assertion that plaintiff's "allegations" and "claims" in the joint motion are "untrue" or "obvious lies" is by definition an opinion. It cannot be proven true or false whether Ms. Maxwell "appreciated" Epstein's immunity or whether she "acted as a madame." Indeed, it seems quite obvious that the joinder-motion allegations about "appreciation" and "madame" *are themselves opinion*.

In the statement, Mr. Barden on behalf of Ms. Maxwell also says plaintiff's "original allegations . . . have been fully responded to and shown to be untrue." Doc.542-6, Ex.F. This cannot be proven true or false. The "full response" to the original allegations is a reference to the "Statement on Behalf of Ghislaine Maxwell" issued March 9, 2011, in response to plaintiff's

15

allegations contained in media stories, including the Churcher articles. *See* Doc.542-3, Ex.C. Whether the 2011 statement "fully" responded to the original allegations and whether it "showed" the original allegations to be untrue are pure (argumentative) opinion. "[O]bvious lies" on its face is an opinion. The "obviousness" of a lie simply cannot be proven true or false.

 **Factor 3: The full context of the statement.** Three contextual facts are revealed by the Rule 56 record. **One**, the email transmitting the statement to the media-representatives—along with the third-person references to Ms. Maxwell—told them Ms. Maxwell did not prepare the statement: "Please find attached a quotable statement *on behalf of* Ms. Maxwell." Doc.542-6, Ex.F (emphasis supplied). It is undisputed that in fact Mr. Barden prepared the bulk of it and ultimately approved and adopted as his work all of it. Doc.542-7, Ex.K ¶ 10.

 **Two**, Mr. Barden's statement issued on behalf of his client would not be a traditional press release solely to disseminate information to the media; this is why he did not request Mr. Gow or any other public relations specialist to prepare or participate in preparing the statement. *Id.*, Ex.K ¶ 15. The statement was a broad-brush communique to the media about plaintiff and her new allegations; it was not to be a "point by point" rebuttal of each new allegation. *Id.*, Ex.K ¶ 13. The logic and approach to preparing the statement were simple: compare plaintiff's prior allegations and conduct in telling her story with her current allegations and conduct. *See generally id.*, Ex.K ¶ 13. When he wrote the statement, he knew of plaintiff's 2011 allegation that she had *not* had sex with Prince Andrew and he knew of her CVRA allegation that she *did* have sex with him. *Id.*, Ex.K ¶ 14. Also within his knowledge was the story she had told Churcher before March 2011—a story that was far *less* provocative and salacious than the one she included in the joinder motion. *See id.*, Ex.K ¶ 5; *compare* Docs.542-1 & 542-2, Exs.A & B (Churcher articles published March 2011) *with* Doc.542-4, Ex.D (plaintiff's joinder motion containing dramatically different and more lurid and salacious allegations).

Mr. Barden's approach provides critical context to explaining how the statement builds a logical argument that the new allegations are false. It first notes plaintiff's "original allegations"; then it points out how the story changed and was embellished over time, "now" with allegations that plaintiff had sex with a prominent and highly respected Harvard law professor ("Each time the story is re told [sic] it changes with new salacious details about public figures and world leaders . . . ."). The argument builds up to the opinion in the third paragraph: "[Plaintiff's] claims are obvious lies and should be treated as such . . . ." Doc.542-6, Ex.F. *See generally id.*, Ex.K ¶¶ 13-22. This third paragraph—and the threat in the fourth paragraph to sue the media for republication of plaintiff's falsehoods—confirms what is plain from the statement itself: it was not a traditional press release.

**Three**, the statement was intended to respond (via denial) to the media-recipients' requests for a reply to the new CVRA joinder-motion allegations. *Id.* ¶¶ 8, 10, 16. But more than that, it was intended to be "a shot across the bow" of the media. *Id.* ¶ 17. The logical argument was created to (a) persuade the media-recipients that they needed to "subject plaintiff's allegations to inquiry and scrutiny"; (b) explain to the media-recipients how it was "obvious" that plaintiff "had no credibility" because of her shifting story and increasingly lurid and salacious allegations as time went on, many of which (e.g., the allegations of sex with Prince Andrew and Professor Dershowitz) on their face appear far-fetched,[15] and (c) warn the media-

---

[15]Since the CVRA joinder motion, there has emerged a substantial amount of evidence—some from plaintiff's own pen—that plaintiff's allegations about having been "forced" to have sex with prominent individuals are falsehoods. A telling example is a series of emails between plaintiff and reporter Churcher when plaintiff was working on negotiating a book deal about her alleged experiences and Churcher was trying to help her. On May 10, 2011, plaintiff tells Churcher she cannot remember whom she had told Churcher she had had sex with. Churcher responds responds, "Don't forget Alan Dershowitz," which Churcher says is a "good name for [plaintiff's] pitch" to her literary agent. It is clear neither Churcher nor plaintiff believed plaintiff

(footnote cont'd on next page)

recipients that they republished plaintiff's obvious falsehoods against Ms. Maxwell at their legal peril. *See id.* ¶¶ 13, 16, 17, 20.

As the New York Court of Appeals observed, the context of a statement often is the "key consideration" in fact vs. opinion cases. *Davis*, 22 N.E.3d at 1006. So it is here. As *Davis* suggested, the three challenged statements are "subject to [Ms. Maxwell's] interpretation," *id.* at 1007; *accord Sweeney v. Prisoners' Legal Servs. of N.Y.*, 538 N.Y.S.2d 370, 371-72 (3d Dep't 1989). The context of the January 2015 statement makes clear that the characterization of plaintiff's allegations and claims as "untrue" or "obvious lies" are ultimate opinions—conclusions—drawn from disclosed facts.

**Factor 4: The broader setting surrounding the statement, including conventions that might signal to readers that the statement likely is opinion and not fact.** It is undisputed that the January 2015 statement was sent exclusively to more than six and fewer than thirty media representatives, each of whom expressly had requested from Mr. Gow that he provide them with Ms. Maxwell's reply to the new joint-motion allegations. Doc.542-7, Ex.K ¶¶ 8, 10. As was obvious from the statement, it was not a traditional press release, as such a release does not explain—lawyer-like—why new allegations when measured against previous allegations lack credibility. Nor does a traditional release threaten to sue the media to whom the release is sent. The media representatives upon receiving the January 2015 statement would have understood it was presenting an (opinionated) argument that plaintiff was not credible because of her

---

had had sex with Professor Dershowitz, since (a) Churcher suggests that he would be a "good name" to "pitch" *because* of his prominence ("he [represented] Claus von Bulow and a movie was made about that case…title was Reversal of Fortune"), and (b) Churcher states, "We all *suspect* [Professor Dershowitz] is a pedo[phile] and tho *no proof of that*, you probably met him when he was hanging put w [Epstein]." Menninger Decl., Exhibit.OO, at Giuffre004096-97 (emphasis supplied).

18

inconsistent and shifting sex abuse story and her increasingly lurid allegations against more and more prominent individuals. And they would have understood that these characteristics of a storyteller undermine her credibility and *ergo* the credibility of her new allegations.

In its 12(b)(6) order the Court said the three sentences have the effect of denying plaintiff's story but "they also clearly constitute fact to the reader." The ruling is affected in two ways by the Rule 56 record. Based on the foregoing discussion of the evidence, the three sentences clearly constitute (argumentative) opinions of Mr. Barden on behalf of Ms. Maxwell.

Though the Court did not discuss who is "the reader," this is important in *Steinhilber* Factor 4." Under settled defamation-opinion law, an allegedly defamatory statement is to be viewed "from the perspective of the audience to whom it is addressed." *Dibella v. Hopkins*, No. 01 CIV. 11779 (DC), 2002 WL 31427362, at *2 (S.D.N.Y. Oct. 30, 2002). Here, "the reader" is six to thirty journalists. They could not have read the July 2015 statement—or the three allegedly defamatory sentences—the same way it was read by these journalists' audience, i.e., the general public. This is because, as plaintiff implicitly concedes, these journalists only republished excerpts—and not the entirety of the statement, which would have given context to the three sentences. It is axiomatic that an out-of-context republication of the three sentences—without the rest of the statement—would deprive the reader of the logic and reasoning behind the opinionated conclusion that plaintiff was making "untrue" allegations and telling "obvious lies."

19

### III. The pre-litigation privilege bars this action.

#### A. The privilege applies to the January 2015 statement.

Statements pertinent to a good faith anticipated litigation made by attorneys (or their agents under their direction[16]) before the commencement of litigation are privileged and "no cause of action for defamation can be based on those statements," *Front, Inc. v. Khalil*, 28 N.E.3d 15, 16 (N.Y. 2015). The facts that must be established, therefore, are (a) a statement, (b) that is pertinent to a good faith anticipated litigation, and (c) by attorneys or their agents under their direction. We did this. *See* Memo. of Law 6-8, 33-38; Doc.542-7, Ex.K ¶¶ 8-30. For example, Mr. Barden (a) drafted the vast majority of the January 2015 statement and approved and adopted all of it, (b) directed Mr. Gow to send it to the media representatives who had requested Ms. Maxwell's reply to plaintiff's joint-motion allegations, (c) in the statement threatened legal action again these media representatives, and (d) at the time of the statement "was contemplating litigation against the press-recipients." *Id.*, Ex.K ¶¶ 10, 16-17, 28, 30.

Plaintiff argues without citation to authority: Ms. Maxwell herself did not testify she intended to sue; she hasn't offered any witnesses to testify she intended to bring a lawsuit; she didn't in fact sue; and—this one is a *non-sequitur*—the statement was an "attempt[] to continue to conceal her criminal acts." Resp. 41-42. These arguments fail. The privilege exists without regard to whether *Ms. Maxwell* testifies she "intended" to sue, whether she has "witnesses" to say she intended to sue, or whether she "in fact" sued. It refers to "anticipated" litigation, not "guaranteed" litigation. Indeed, the point of the pre-litigation privilege is to promote communications that *avoid* litigation. *See Khalil*, 28 N.E.3d at 19 ("When litigation is

---

[16]*See Chambers v. Wells Fargo Bank, N.A.*, No. CV 15-6976 (JBS/JS), 2016 WL 3533998, at *8 (D.N.J. June 28, 2016); *see generally Hawkins v. Harris*, 661 A.2d 284, 289-91 (N.J. 1995).

anticipated, attorneys and parties should be free to communicate in order to reduce or avoid the need to actually commence litigation."). It applies when there is a good faith basis to *anticipate* litigation. Mr. Barden, Ms. Maxwell's lawyer who *drafted and caused the statement to be sent out*, actually was anticipating litigation. Doc.542-7, Ex.K ¶ 28. The argument that the statement was an attempt to "conceal" Ms. Maxwell's "criminal acts" is fatuous. It would be hard to *post facto* "conceal" alleged criminal acts that plaintiff luridly and salaciously described in an earlier public filing, i.e., in the CVRA case, in which the United States government was the defendant.

Citing no record evidence, plaintiff argues, "The record evidence shows [Mr. Barden] did not make the [January 2015] statement." Resp. 42. That argument is easily disposed of by Mr. Barden's uncontested testimony. *See* Doc.542-7, Ex.K ¶¶ 10-13, 15-17, 20, 26-28, 30.

### B. Malice is irrelevant to the pre-litigation privilege.

Citing the New York Court of Appeals' decision in *Khalil*, we pointed out that malice is not relevant to the pre-litigation privilege. Memo. of Law 34-35. To prevail on the pre-litigation privilege the defendant need only establish *one element*: the allegedly defamatory statement at issue was "'pertinent to a good faith anticipated litigation.'" *Id.* (quoting *Khalil*, 28 N.E.3d at 16). Plaintiff disputes this and, without discussing *Khalil* or citing authorities, simply argues the pre-litigation privilege is "foreclosed . . . because [Ms. Maxwell] acted with malice." Resp. 43. As suggested by her inability to find any law to support her, plaintiff is wrong.

Under general New York defamation law, "[t]he shield provided by a qualified privilege may be dissolved" if plaintiff in rebuttal can show that the defendant "spoke with 'malice.'" *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992); *accord Khalil*, 28 N.E.3d at 19. "Malice" means two things: spite or ill will, and knowledge of falsity or reckless disregard of falsity. *Liberman*, 605 N.E.2d at 349. Plaintiff relies on this general qualified-privilege law.

21

The problem for plaintiff is that in *Khalil* the New York Court of Appeals held this general rule does not apply to the pre-litigation privilege. Khalil worked for a company named Front. After eight years, he resigned and began working for "EOC," one of Front's competitors. Front's lawyer Kimmel sent a demand letter to Khalil alleging he had committed criminal, tortious and ethical misconduct. Kimmel sent another demand letter to EOC and others stating Khalil had conspired with EOC to breach his fiduciary duty to Front. Six months later, Front sued Khalil. Khalil brought a third-party claim against Kimmel for libel *per se*. The trial court dismissed the lawsuit, ruling that the letters were "absolutely privileged" under the litigation privilege "and that it therefore did not need to reach the question of malice." 28 N.E.3d at 17 (internal quotations omitted). The Appellate Division affirmed, holding that the litigation privilege absolutely protected the letter "because they were issued in the context of prospective litigation." *Id.* at 18 (internal quotations omitted).

The Court of Appeals affirmed, but altered the law on the litigation privilege. It observed, "Although it is well-settled that statements made *in the course of litigation* are entitled to absolute privilege, this Court has not directly addressed whether statements made by an attorney on behalf of his or her client in connection with *prospective litigation* are privileged." *Id.* (emphasis supplied). Some Appellate Division departments had held the absolute privilege applies to statements made in connection with prospective litigation, but other departments had held such statements were entitled only to a qualified privilege. *Id.*

The answer to whether pre-litigation statements should be absolute or qualified, the Court of Appeals held, is driven by the rationale for protecting pre-litigation statements:

> When litigation is anticipated, attorneys and parties should be free to communicate in order to reduce or avoid the need to actually commence litigation. Attorneys often send cease and desist letters to avoid litigation. . . . Communication during this pre-litigation phase should be encouraged and not chilled by the possibility of being the basis for a defamation suit.

22

*Id.* at 19. However, the court recognized that "extending privileged status to communication made prior to anticipated litigation has the potential to be abused"; extending an absolute privilege to this context, the court said, "would be problematic and unnecessary." *Id.*

The court held it would recognize only a qualified privilege for pre-litigation communications. *Id.* Crucially to the case at bar, the court held that the traditional privilege-rebuttal malice was *inapplicable* to the pre-litigation privilege:

> *Rather than applying the general malice standard to this pre-litigation stage*, the privilege should only be applied to statements pertinent to a good faith anticipated litigation. This requirement ensures that privilege does not protect attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims, unsupported in law and fact, in violation of counsel's ethical obligations. Therefore, we hold that statements made prior to the commencement of an anticipated litigation are privileged, and that *the privilege is lost where a defendant proves that the statements were not pertinent to a good faith anticipated litigation*.

*Id.* (emphasis supplied).

Accordingly, the only question is whether the January 2015 statement Mr. Barden caused to be issued to the six to thirty journalists was "pertinent to a good faith anticipated litigation." The undisputed evidence establishes that the answer is yes. Mr. Barden anticipated litigation.[17] He "fully complied with [his] ethical obligation as a lawyer."[18] He was hardly "bully[ing], harass[ing], or intimidat[ing]" the six to thirty journalists, since he caused a press agent, Mr.

---

[17] *See* Doc.542-7, Ex.K ¶ 28 ("At the time I directed the issuance of the statement, I was contemplating litigation against the press-recipients . . . ."); *id.* ¶ 17 (statement was intended as "'a shot across the bow'"; "the statement was very much intended as a cease and desist letter to the media-recipients, letting [them] understand the seriousness with which Ms. Maxwell considered the publication of plaintiff's obviously false allegations and the legal indefensibility of their own conduct"); Doc.542-6, Ex.F ("Maxwell . . . reserves her right to seek redress").

[18] Doc.542-7, Ex.K ¶ 26.

23

Gow, to issue the statement,[19] and he believed he had an affirmative duty in representing Ms. Maxwell to prepare the statement and cause it to be delivered to the journalists.[20]

Plaintiff argues that when Mr. Barden issued the January 2015 statement on Ms. Maxwell's behalf, he had only "'wholly unmeritorious claims, *unsupported in law and fact*, in violation of counsel's ethical obligations'" and did not have "'good faith anticipated litigation.'" Resp. 46 (quoting *Khalil*, 28 N.E.3d at 19; italics omitted). Plaintiff's rationale? Because she was telling the truth and so the media would only be reporting the truth. *Id.* That is a nonsensical, frivolous argument.

Whether Mr. Barden, who represents Ms. Maxwell, had a meritorious or good faith basis for anticipating defamation litigation has nothing to do with whether the media believed plaintiff was telling the truth, and surely not whether *the plaintiff* believed or said she was telling the truth. Based on his knowledge of plaintiff's history, Mr. Barden in good faith believed that plaintiff had been making false allegations for years and that the falsity of the allegations "should have been obvious to the media." Doc.542-7, Ex.K ¶ 13; *see id.* ¶¶ 14, 16-17, 20-23, 26-28, 30. Accordingly, at the time he caused the statement to issue, Mr. Barden had a good-faith basis to anticipate litigation against any of the media that republished plaintiff's false allegations.

It hardly matters for purposes of the pre-litigation privilege whether the media republished or did not republish plaintiff's allegations or whether Mr. Barden ultimately did or did not sue any of the media for any republication. As the *Khalil* court recognized, "[a]ttorneys often send cease and desist letters to avoid litigation," 28 N.E.3d at 19, and such letters have a

---

[19]The *Khalil* court admonished attorneys to "exercise caution when corresponding with unrepresented potential parties who may be particularly susceptible to harassment and unequipped to respond properly even to appropriate communications from an attorney." *Khalil*, 28 N.E.3d at 19 n.2.

[20]*See* Doc.542-7, Ex.K ¶ 26.

valid purpose protected by the pre-litigation privilege. Mr. Barden testified that the January 2015 statement in fact served as a cease and desist letter. *See* Doc.542-7, Ex.K ¶ 17.

### IV. Ms. Maxwell's January 4, 2015, statement is nonactionable.

Plaintiff did not respond to our argument that Ms. Maxwell's January 4, 2015, statement to a reporter is nonactionable. *See* Memo. of Law 38-39. We respectfully submit plaintiff has confessed this point. *See Cowan*, 95 F. Supp. 3d at 645-46.

### V. Summary judgment is warranted because plaintiff cannot establish falsity or actual malice by clear and convincing evidence.

Plaintiff is a public figure. *See* Memo. of Law 16-17, 49-54. Therefore, she must prove falsity and actual malice. Under New York law, a public-figure defamation plaintiff must go beyond the federal constitutional minimum and prove falsity by clear and convincing evidence. *Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 358 & n.6 (S.D.N.Y. 2014) (citing *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir.2005)). She must also prove actual malice by clear and convincing evidence. *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 114 (2d Cir. 2005) (quoting *Phila. Newspapers v. Hepps*, 475 U.S. 767, 773 (1986)).

Clear and convincing evidence is evidence that "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Blair*, 7 F. Supp. 3d. at 358 (internal quotations and brackets omitted).

Plaintiff must prove by clear and convincing evidence (a) the material falsity of three sentences in the context of the January 2015 statement, and (b) Ms. Maxwell's actual malice, i.e., knowledge of the falsity of the three sentences or reckless disregard of whether they were false. The three sentences are: in the first paragraph of the statement, plaintiff's allegations are

"untrue"; in the same paragraph, the "original allegations" have been "shown to be untrue"; and in the third paragraph, plaintiff's "claims are obvious lies."[21] Doc.1 ¶ 30.

Plaintiff cannot prove the falsity of the three sentences, let alone actual malice. If the Rule 56 record establishes that *two* of plaintiff's CVRA joinder-motion allegations are false and *two* of her "original" allegations are false, this defamation action collapses on itself. This is because the statement does not specify how many of plaintiff's allegations are false; it certainly does not say "all" plaintiff's allegations are false. It uses the plural of "allegation." The plural of allegation literally means "more than one." *See* Memo. of Law 21.

**Sentence No. 1.** Since the sentence does not specify any particular allegation and since plaintiff made a plethora of allegations against Ms. Maxwell, plaintiff would be required to prove the truth of every one of the plethora of allegations *and* that Ms. Maxwell knew each one of the allegations was true. Conversely, if there are at least two allegations that plaintiff cannot prove to be true or if there was good reason for Ms. Maxwell to believe at least two of the allegations to be false, then summary judgment should enter against plaintiff.

There are at least two allegations by plaintiff against Ms. Maxwell that are untrue. In the CVRA joinder motion, plaintiff alleged that in plaintiff's first encounter with Mr. Epstein, Ms. Maxwell took her to Mr. Epstein's bedroom for a massage that Mr. Epstein and Ms. Maxwell "turned . . . into a sexual encounter," Doc.542-4, Ex.D, at 3. This allegation contradicted her allegation in the Sharon Churcher article that a woman *other than* Ms. Maxwell

---

[21]Ms. Maxwell said in her deposition she "know[s]" plaintiff is a "liar." This testimony, plaintiff argues, "contradict[s]" our contention that the three sentences in the January 2015 statement are opinion. Resp. 39-40. Plaintiff's argument is a *non-sequitur*. Ms. Maxwell's 2016 deposition testimony in which she disclosed all the reasons she believes plaintiff has uttered a plethora of false allegations is wholly irrelevant to whether the three sentences in the January 2015 statement, prepared by Mr. Barden to respond to the joint-motion allegations, are opinions.

took her to Mr. Epstein's bedroom; during the massage *that* woman gave instructions to plaintiff, and the massage "quickly developed into a sexual encounter." Doc.542-1, Ex.A, at 4.

A second allegation pertaining to plaintiff's entire story about Ms. Maxwell's introduction of plaintiff to Prince Andrew is untrue. In the joinder motion, plaintiff alleged Ms. Maxwell served an "important . . . role" in "Epstein's sexual abuse ring," namely, connecting Mr. Epstein to "powerful individuals" who would sexually abuse plaintiff. *Id.*, Ex.D, at 5. Plaintiff alleged that in this role Ms. Maxwell introduced plaintiff to Prince Andrew, and she was "forced to have sexual relations with this Prince in three separate geographical locations," including Ms. Maxwell's London apartment. *Id.*, Ex.D, at 5. These allegations directly contradicted her earlier allegations in the 2011 Churcher article that (a) there never was "any sexual contact between [plaintiff] and [Prince] Andrew," and (b) Prince Andrew did not know "Epstein paid her to have sex with [Epstein's] friends." *Id.*, Ex.A, at 6.

Mr. Barden on behalf of Ms. Maxwell said in the first sentence that plaintiff's "allegations"—plural—against Ms. Maxwell are "untrue." We have just established through plaintiff's own contradictory words that it would be fair to characterize at least two of her allegations to be untrue. Having spent significant time with Ms. Churcher in 2011 and having substantial incentive to disclose all important details of her "sex abuse" story, *see* Menninger Decl. EXHIBIT OO, plaintiff in 2011 presented a story that exculpated Ms. Maxwell and Prince Andrew of the very misconduct that in 2015—after securing a lawyer and seeing her story as a profit vehicle—she inculpated them for. In the face of her contradictory allegations, plaintiff cannot possibly prove by clear and convincing evidence that all her joinder-motion allegations are true, or that when Ms. Maxwell said they were untrue, she knew each one of the allegations was true or that she recklessly disregarded whether each one was true.

27

Under New York law, a defendant's allegedly defamatory statement is held "to a standard of substantial, not literal, accuracy." *Law Firm of Daniel P. Foster,* 844 F.2d at 959. Here, Ms. Maxwell's first sentence *literally* is true: more than one of plaintiff's allegations are "untrue." Accordingly, there is no defamation.

**Sentence No. 2.** The second sentence at issue in this action states, "The original allegations are not new and have been fully responded to and shown to be untrue." Plaintiff alleges the sentence is defamatory to the extent it asserts the original allegations were "shown to be untrue." Doc.1 ¶ 30. Plaintiff cannot prove this statement's falsity.

It is a matter of pure opinion whether any given allegation was "shown" to be untrue. Some people require more proof than others to conclude that a fact has been "shown to be untrue." We discussed above various examples of this, e.g., climate change. Here, Ms. Maxwell via Mr. Barden in March 2011 issued a statement denying plaintiff's Churcher-story allegations as "all entirely false." Doc.542-3, Ex.C. Plaintiff did not respond to this statement, let alone claim it was defamatory. Her non-response reasonably could be seen as a concession that Ms. Maxwell's denial was righteous. *See* Doc.542-7, Ex.K (Mr. Barden: "I would have been remiss if I had sat back and not issued a denial, and the press had published that Ms. Maxwell had not responded to enquiries and had not denied the new allegations; the public might have taken the silence as an admission there was some truth in the in allegations.").

Regardless, we easily can show two of plaintiff's original allegations are untrue. Many of plaintiff's original allegations are contained in the two Churcher articles, Docs.542-1 & 542-2, Exs.A & B. The articles contained numerous allegations by plaintiff relating to her alleged sexual abuse. In her deposition, plaintiff was shown Deposition Exhibit 7, a collection of some of her allegations in the articles. Plaintiff placed checkmarks by those allegations she admitted— over the course of 20 pages of testimony—were not true. *See* Menninger Decl. Exhibit PP, at

28

435:7-455:6 & Depo. Ex.7. These include her claims that: (1) she was 17 when she flew to the Caribbean with Mr. Epstein and Ms. Maxwell "went to pick up Bill in a huge black helicopter," referring to former President Bill Clinton; (2) her conversation with Mr. Clinton about Ms. Maxwell's pilot skills; and (3) Donald Trump was a "good friend" of Mr. Epstein's and "flirted with me".

Plaintiff's admissions on the falsity of her original allegations are fatal to her defamation claim as to the second sentence. The eleven admittedly false "original allegations" axiomatically would warrant the second sentence. Plaintiff has no possible way to prove the second sentence is false. Indeed, like Ms. Maxwell's first sentence, the second sentence literally is true: more than one of plaintiff's original allegations are untrue. A statement that literally is true cannot be defamatory as a matter of law. *See Law Firm of Daniel P. Foster,* 844 F.2d at 959.

**Sentence No. 3.** Defamation as to the third sentence is foreclosed. To begin with, as discussed above, whether plaintiff has uttered "obvious lies" is a matter of opinion: in the face of plaintiff's gratuitous and lurid allegations of Ms. Maxwell's years-long participation at the center of a child sex-trafficking ring, for the journalists-recipients of the July 2015 statement the phrase was an anticipated "epithet[], fiery rhetoric or hyperbole," *Steinhilber,* 501 N.E.2d at 556 (internal quotations omitted); *see Tel. Sys. Int'l*, 2003 WL 22232908, at *2 (observing Court's previous holding in *Rizzuto* that defendants' use of phrases "conned," "rip off" and "lying" in advertisements were not actionable as libel and were "rhetorical hyperbole, a vigorous epithet used by those who considered themselves unfairly treated and sought to bring what they alleged were the true facts to the readers") (internal quotations omitted).

Even if *arguendo* the third sentence—plaintiff's "claims are obvious lies"—cannot be considered opinion, the Rule 56 record forecloses a defamation claim. The sentence does not specify which of plaintiff's "claims," i.e., allegations, are obvious lies. It could refer to the

"original" claims; the "new," CVRA claims; the claims against Ms. Maxwell; the claims against anyone, including Professor Dershowitz, who was mentioned in the preceding sentence; or any two or more of all the claims plaintiff ever had made about her alleged experiences as the alleged victim of a child sex-trafficking ring.

Regardless of what is being referred to, there is no defamation. As demonstrated in the discussion above of the first and second sentences, the Rule 56 record establishes that at least two of plaintiff's "original" allegations are untrue, at least two of her CVRA allegations are untrue, at least two of her allegations against Ms. Maxwell are untrue, at least two of her allegations against anyone (e.g., Ms. Maxwell, Prince Andrew or Professor Dershowitz) are untrue, and at least two of her allegations about her alleged sex-trafficking experiences are untrue. Moreover, the untruthfulness—the falsity—of the allegations certainly is "obvious." After all, plaintiff herself admitted under oath that a multitude of her original allegations are untrue, and she implicitly admitted some of her CVRA allegations are untrue because they were contradicted by her original allegations.

## CONCLUSION

The Court should grant summary judgment in favor of Ms. Maxwell.

February 10, 2017.

Respectfully submitted,


*s/ Laura A. Menninger*

Laura A. Menninger (LM-1374)
Jeffrey S. Pagliuca (*pro hac vice*)
Ty Gee (*pro hac vice pending*)
HADDON, MORGAN AND FOREMAN, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone:    303.831.7364
Fax:       303.832.2628
lmenninger@hmflaw.com

*Attorneys for Defendant Ghislaine Maxwell*

## CERTIFICATE OF SERVICE

I certify that on February 10, 2017, I electronically served this *Reply Brief in Support of Defendant's Motion for Summary Judgment* via ECF on the following:

Sigrid S. McCawley
Meredith Schultz
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Ste. 1200
Ft. Lauderdale, FL 33301
smccawley@bsfllp.com
mschultz@bsfllp.com

Bradley J. Edwards
Farmer, Jaffe, Weissing, Edwards, Fistos &
Lehrman, P.L.
425 North Andrews Ave., Ste. 2
Ft. Lauderdale, FL 33301
brad@pathtojustice.com

Paul G. Cassell
383 S. University Street
Salt Lake City, UT 84112
cassellp@law.utah.edu

J. Stanley Pottinger
49 Twin Lakes Rd.
South Salem, NY 10590
StanPottinger@aol.com

*s/ Nicole Simmons*
Nicole Simmons